cc: SOM

ORIGINAL

TROY ALAN LYNDON
1670 Makaloa Street, Suite 204 PMB 380
Honolulu, HI 96814
Telephone: (808) 799-8889
Fax: (951) 602-6120
Email: troylyndon@gmail.com
TROY LYNDON, Pro Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JUL 24 2013
at 8 o'clock and 35 min. A M.
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

TROY ALAN LYNDON, an individual,

Plaintiff,

vs.

SECURITIES AND EXCHANGE COMMISSION, PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD, THE DEPOSITORY TRUST & CLEARING CORPORATION, and FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Delaware not-for-Profit Corporation,

Defendants,

CIVIL NO. CV 13 00367 SOM BMK

COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS A-D; SUMMONS

## I. INTRODUCTION

1. This is a civil action brought against Defendants SECURITIES AND EXCHANGE COMMISSION ("SEC"), PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD ("PCAOB"), FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. ("FINRA") and THE DEPOSITORY TRUST & CLEARING CORPORATION ("DTCC") (hereinafter, "Defendants") requesting this Court to issue a Writ of Mandamus to compel said Defendants to perform their nondiscretionary duties, adopt policies improving and reducing corruption resulting from self-regulation, in the interest of Plaintiff and the public. The DTCC is included in this civil action because its actions directly impacted Plaintiff and the public, under the regulatory oversight of SEC.

2. Plaintiff alleges that Defendants' intentional disregard and/or willful misconduct occurred as a result of religious discrimination and/or intentional disregard and negligence, covering-up

securities trading fraud, either separately or conspiratorially, causing financial injury and emotional distress to Plaintiff, his company and its shareholders.

## II.     PARTIES, JURISDICTION AND VENUE

3.     Plaintiff is, and at all times herein relevant, was a citizen of the State of Hawai'i.

4.     Defendant, SEC is a self-regulated government agency of the United States of America that also oversees the PCAOB and FINRA as stated on page 4 of SEC's FY 2014 Congressional Budget Justification (http://www.sec.gov/about/reports/secfy14congbudgjust.pdf).

5.     Defendant, DTCC is regulated by SEC as stated on page 7 of An Introduction to DTCC (http://www.sec.gov/about/reports/secfy14congbudgjust.pdf).  Defendant DTCC's principal place of business is located in New York, NY, and regularly and systematically does business in the State of Hawaii.

6.     Defendant PCAOB is a nonprofit corporation established by Congress to oversee the audits of public companies in order to protect the interests of investors and further the public interest in the preparation of informative, accurate and independent audit reports.  PCAOB's principal place of business is located in Washington, D.C. and regularly and systematically does business in the State of Hawaii.

7.     Defendant FINRA is a Delaware Not-For-Profit Corporation with its principal place of business in Washington, D.C., and through its District 1 Offices located in San Francisco, CA, regularly and systematically does business in the State of Hawaii.

8.     This is an action arising out of the laws of the United States of America and involves a federal question and, therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

## III.     BACKGROUND

### *FINRA's Discriminatory Materials and Videos*

9.   Plaintiff is the voting control shareholder of Left Behind Games Inc. (ticker symbol: LFBG).

Plaintiff is also a recipient of the coveted Entrepreneur of the Year award, presented by Inc. Magazine, Merrill Lynch and Ernst & Young. Plaintiff has been a prolific video game designer in his earlier years before becoming a successful entrepreneur, where nearly every start-up was profitable within the first 90 days of business. For 5 years, Plaintiff served with his talents with one of the world's largest missionary organizations. Plaintiff oversees the development of inspirational video games – which provide a healthy alternative in the video game industry that creates terribly violent content. Plaintiff is most well-known as the team lead developer of the world's first 3D Madden Football game, which remains the most successful sports franchise in video game history. Plaintiff is dedicated to creating games which perpetuate universally accepted family values. To see his product line, go to: www.leftbehindgames.com. As a result of the events outlined herein, Plaintiff filed for bankruptcy chapter 7, which was fully discharged in 2012.

10.     FINRA's Investor Education Foundation publications tell potential investors to "Beware of Affinity Fraud." Although the concept sounds good, FINRA's implementation is severely flawed. Nowhere when faith or religious groups are discussed in materials and videos does FINRA provide an adequate disclaimer clarifying, "not all religiously associated ventures are scams."

11.     As a result of this irresponsible discrimination by FINRA, at least one shareholder in Plaintiff's company, known in online boards as "noquit," has become so enraged by his perception of affinity fraud as presented by FINRA, that he has lost all objectivity – missing more than one opportunity to recover his investment, despite the fact that he misrepresented himself to Plaintiff as an accredited investor.

12.     Plaintiff recognizes noquit as a victim of FINRA's bias and accordingly, has not provided his full name herein.

13.     It was noquit who first mailed a FINRA video to Plaintiff, which featured religiously discriminating affinity fraud.

14. Unfortunately, noquit to this day continues his almost daily opposition against Plaintiff and his company as a result of FINRA's education videos – this situation can be summarized as the government enragaging a citizen to become an online stalker against a man of faith who cares for him.

15. One video is titled, "Faith Alone Should Not Decide Your Financial Security" opens with full-screen text, "A Con Artist with Religious Affinity on His Side." The video is located on FINRA's Investor Education YouTube channel at: http://www.youtube.com/watch?v=cZxhimhDFT4&feature=c4-overview&list=UUcLZZB_P6G8EoTjnGiY9aMw.

16. Another video titled "How to Spot Investment Scams in 6 Simple Steps" includes the narrator's warning, "Beware of Affinity Fraud – investment scams which prey against members of the same Social Circles, Religious Group or Ethnic background…" This video is also on FINRA's YouTube channel at: http://www.youtube.com/watch?v=MaL8Qol55PU&feature=c4-overview&list=UUcLZZB_P6G8EoTjnGiY9aMw

17. FINRA also has numerous education materials in print which also include religious discrimination.

***2009 FINRA, DTCC & SEC Violation***

18. On June 19, 2009, Plaintiff uncovered a naked-short position in his company's stock (ticker symbol: LFBG) by securities brokerage, Newbridge.

19. Newbridge clears its securities transactions on a fully disclosed basis through Legent Clearing LLC (herein "Legent").

20. Plaintiff carbon-copied FINRA on communications with Newbridge, referred herein as Exhibit "A", which includes a list of Newbridge's violations against Plaintiff and his shareholders.

21. Rather than immediately investigate this tremendously obvious, illegal act on behalf of Newbridge, FINRA demanded to see proof of Plaintiff's correspondence with Walmart's Mike Duke, CEO of the world's largest corporation who gave Plaintiff 20 minutes of his time and decided to test market Plaintiff's products in Walmart stores. This could be likened to a situation in which a criminal steals 20 lady's handbags in a crowd, and then when the good Samaritan tells a police officer and points

to the criminal doing the stealing, instead of going after the criminal, the police officer frisks and detains the good Samaritan – leaving the criminal to steal the ladies handbags and worse, never even bothering to visit the home of the criminal or recover the handbags – knowing exactly where he lives.

22.     In order for Newbridge to cover their naked position, Newbridge halted all trading of shares in LFBG by approximately 20 account holders (shareholders in Plaintiff's company).

23.     Newbridge's General Counsel, Gregg J. Breitbart, responded to Plaintiff's concerns as evidenced herein as Exhibit "B" and verified Newbridge's action which devastated Plaintiff.

24.     DTCC was aware of the naked-position by Newbridge through Legent, and notified Legent of a $9 million dollar penalty as a result of their policies. DTCC settled the matter for an undisclosed amount, or for nothing at all, while covering-up Newbridge's known illegal, naked position without reporting it to any regulatory agency.

25.     The officer of Newbridge who communicated with Plaintiff about this matter as evidenced in Exhibit "A" and Exhibit "B" was Brian G. Curtis, Vice President and Senior Compliance Officer of Newbridge.

26.     Brian G. Curtis, was a former associate principal examiner for FINRA.

27.     FINRA failed to protect Plaintiff, his company and shareholders, by knowingly allowing Newbridge to cover their naked position with shares they didn't own, while simultaneously deceiving their account holders who were also Plaintiff's investors.

28.     Plaintiff and others affected were irreparably harmed by FINRA's intentional cover-up of Newbridge's actions, which also prevented Newbridge's clients who were also Plaintiff's investors from selling shares for a 7500% profit on the day of the Walmart announcement.

29.     FINRA & DTCC's awareness of Newbridge's egregious violation and neglect of Plaintiff's reports had a direct impact on Plaintiff, his company and shareholders.

30.     SEC was made aware of the violation in a shareholder letter, provided by Plaintiff, filed in an 8-K exhibit on June 24, 2011, 5 days thereafter, as evidenced herein as Exhibit "C."

31. Despite Plaintiff's direct requests in writing and numerous communications to SEC, SEC staff has continually intentionally ignored these allegations and worse, has attempted to mislead Plaintiff by stating FINRA and PCAOB are separate organizations and no contact information could be provided, despite what is stated on page 4 of SEC's FY 2014 Congressional Budget Justification.

32. FINRA, DTCC and SEC were aware of Newbridge's crime – then willfully and intentionally covered it up.

***2011 PCAOB Violation***

33. On January 19, 2011, the PCAOB announced that it had permanently revoked the registration of J. Crane CPA, P.C. (the "Firm" or "Crane, P.C.") and permanently barred James Crane from being an associated person of a registered public accounting firm as evidenced in PCAOB communication, evidenced herein as Exhibit "D" and available online at: http://pcaobus.org/Enforcement/Decisions/Documents/Crane.pdf

34. Crane, a former lead auditor for Ernst & Young, and former auditor of Plaintiff's company, confirmed to Plaintiff that PCAOB entered into a pre-negotiated settlement agreement with him prior to the January 19, 2011 announcement.

35. According to Crane, his agreement with the PCAOB released him from any and all obligations to produce documents or participate in any future requisition of information. Crane also confirmed that he knew PCAOB chose this course of action intentionally without notification to Plaintiff, his company or shareholders.

36. PCAOB knew with 100% certainty that its action would directly impact Plaintiff, his company and shareholders - taking them out of a fully-reporting status for the first time ever, out of no act or fault of Plaintiff, destroying Plaintiff's ability to raise necessary capital to keep himself and his company operating at full capacity.

37. Plaintiff has documented misconduct and misleading information intentionally provided by SEC staff when inquiring about PCAOB's and FINRA's actions as well as other matters conducted by and regulated by SEC.

## IV. CLAIM FOR RELIEF

38. The allegations contained in paragraphs 1-37 are hereby re-alleged and incorporated by reference herein.

39. The federal mandamus statute, 28 U.S.C. § 1361, gives a federal district court jurisdiction to compel an agency of the United States to perform a nondiscretionary duty owed to a plaintiff as a matter of law.

40. The SEC, FINRA, PCAOB and DTCC have failed to perform nondiscretionary duty owed to Plaintiff.

**WHEREFORE**, Plaintiff prays that the court:

(1) To compel FINRA to open an investigation regarding Newbridge Securities regarding the securities trading fraud described herein;

(2) To compel FINRA to establish a policy regarding all its affinity fraud educational materials, to adopt and publish a reasonable disclaimer that "not all religiously associated ventures are scams" or "not all affinity marketed ventures are scams";

(3) To compel PCAOB to establish a policy requiring it to publish two additional new database fields to its Audit Firm Summary, (i) State License Status and (ii) Federal License Status, for all audit firms subject to its oversight;

(4) To compel PCAOB to establish a policy to publish all non-disclosed agreements with auditors, past, present and future;

(5) To compel DTCC to establish a policy that no settlement agreements with brokerages and clearing houses, whether verbal or in writing, shall be allowed to reduce or eliminate fines in accordance with its policies, without publishing such settlement agreements publicly online;

(6) To compel SEC to create a new "Internal Affairs" division specifically to internally police the behavior of enforcement investigators and staff, and corrupt back-door dealings of PCAOB, FINRA, DTCC and the SEC itself –a self-regulated agency;

(7) Award Plaintiff its attorneys' fees and costs, including without limitation pursuant to 28 U.S.C. § 2412;

(8) Award Plaintiff its attorneys' fees and costs for associated defensive litigation which may arise as a result of this complaint; and

(9) Grant such other and further relief as this Court deems proper. Plaintiff seeks no monetary damages, other than legal fees requested in (7) and (8) above.

Respectfully Submitted,

DATED: Honolulu, Hawai'i
July 23, 2013

By: ______________________
TROY ALAN LYNDON